## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK HOUCK, *et al.*, | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| | : |
| v. | : No. 24-2151 |
| | : |
| UNITED STATES OF AMERICA, *et al.*. | : |
| | : |
| Defendants. | : |

## ORDER

**AND NOW**, this＿＿day of＿＿＿＿＿＿, 2024, upon consideration of the Commonwealth Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, it is hereby **ORDERED** that the Motion is **GRANTED**. Plaintiff's claims against Commonwealth Defendants Rogers and Barrios are DISMISSED, with prejudice.

**BY THE COURT:**

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
**DIAMOND, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARK HOUCK, *et al.*, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 24-2151 |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## COMMONWEALTH DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Rogers and Barrios (collectively, the "Commonwealth Defendants"), by and through counsel, hereby move the Court to dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). The reasons for this Motion are stated in the accompanying memorandum of law.

MICHELLE A. HENRY
Attorney General

Date: October 10, 2024          By:     */s/ Adrienne M. Box*
_____

Office of Attorney General                Adrienne M. Box
1600 Arch Street, Suite 300               Deputy Attorney General
Philadelphia, PA 19103                    Attorney I.D. No. 325818
Phone: (267) 768-3958
abox@attorneygeneral.gov                  Nicole R. DiTomo
                                          Chief Deputy Attorney General
                                          Civil Litigation Section

                                          *Counsel for Commonwealth*
                                          *Defendants*

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK HOUCK, *et al.*, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-2151 |
| | : | |
| UNITED STATES OF AMERICA, *et al.*. | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF THE
COMMONWEALTH DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**</u>

The Commonwealth Defendants, by undersigned counsel, respectfully submit this memorandum of law in support of Commonwealth Defendants' Motion to Dismiss Plaintiff's Amended Complaint against Commonwealth Defendants pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Commonwealth Defendants move to dismiss Plaintiff's Fourth Amendment Excessive Force claim against them because Commonwealth Defendants are shielded by the doctrine of qualified immunity since they did not violate Plaintiff's federal rights and the law is not clearly established regarding the alleged show of force utilized during Plaintiff's arrest.

## II.    PROCEDURAL AND RELEVANT FACTUAL BACKGROUND

Plaintiffs Mark Houck, Ryan-Marie Houck, and Ryan-Marie Houck on behalf of M.H., A.M.H., K.H., T.H., J.H., A.H., and I.H., filed this civil action with the Complaint, docketed at ECF Doc. No. 1, on May 20, 2024. Plaintiffs, at that time, filed suit against Defendant United States of America under the Federal Tort Claims Act for various claims, and Plaintiff Mark Houck filed an excessive force claim against: Commonwealth Defendants; Defendants Caputo, Calabrese, and Johnson from the Philadelphia Police Department; and Defendant Brosius from the Middletown Police Department under 42 U.S.C. § 1983. ECF No. 1, pp. 5-7, 73. All Defendants filed respective Motions to Dismiss. ECF Nos. 35, 40, 41. Plaintiff Mark Houck filed a Response in Opposition to Commonwealth Defendants' Motion to Dismiss on August 26, 2024. ECF No. 42. Plaintiffs then filed an Amended Complaint on September 12, 2024 against only Defendant United States of America for six claims under the Federal Tort Claims Act (Counts I-VI) and Commonwealth Defendants Rogers and Barrios for a Section 1983 excessive force claim (Count VII). ECF No. 46, ¶ 24-26, p. 91-96.

Within the Amended Complaint, Plaintiff Mark Houck (hereinafter "Plaintiff") alleges Commonwealth Defendants violated his Fourth Amendment rights by utilizing excessive force during his arrest on the morning of September 23, 2022 while executing an arrest warrant for violations of the Freedom of Access to Clinic Entrances Act ("FACE Act"). *Id.* at ¶ 486. The arrest stems from two physical

altercations that occurred on October 13, 2021 near the Planned Parenthood –
Elizabeth Blackwell Health Center between Plaintiff, a "pro-life activist"
volunteering for the Community Women's Center of America ("CWCA"), and
Bruce Love, a Planned Parenthood volunteer. *Id.* at ¶¶ 27-28, 35, 46 57.  Plaintiff
was working for CWCA, a crisis pregnancy center, as a counselor and escort on this
day, while also praying and holding vigil with his 12-year-old son, M.H. *Id.* at ¶ 45.
In the first altercation, Mr. Love approached Plaintiff while he was speaking with
two women outside the CWCA, Mr. Love placed moving pick between Plaintiff and
the women, and Plaintiff then either "shoved" or made "brief and inadvertent
contact" with Mr. Love. *Id.* at 78, 80; Ex. 1, *United States v. Houck*, 22-cr-00323,
ECF No. 1 (Sept. 20, 2022) (Indictment). During the second altercation that occurred
on this day, Plaintiff and Mr. Love were arguing and Plaintiff shoved Mr. Love to
the ground, allegedly in protection of his son. ECF No. 46, ¶ 124-125; Ex. 1, at p. 2,
¶ 5.  Plaintiff caused injuries to Mr. Love that required medical treatment. Ex. 1, at
p. 3, ¶ 2. On September 20, 2022, Plaintiff was indicted with two violations of the
FACE Act by a federal grand jury for "shov[ing]" Mr. Love to the ground twice.
ECF No. 46, ¶ 202; Ex. 1, at 2-4.

Plaintiff was arrested on September 23, 2022 at his home in Kintnersville,
Pennsylvania, pursuant to the arrest warrant issued on September 20, 2022, around
6:45AM when law enforcement announced their presence by ringing the doorbell

and shouting "Police force!" and "Open up!" ECF No. 46, ¶ 233; Ex. 2, *United States*

*v. Houck*, 22-cr-00323, ECF No. 5 (Sept. 23, 2022) (Arrest Warrant).  The Amended

Complaint states Plaintiff's wife and seven children were at home during the arrest.

ECF No. 46, ¶ 232.  Plaintiff alleges there were approximately fifteen to twenty

federal, state, and local law enforcement agents present during the arrest that were

armed, surrounded his home, and pointed guns towards him. *Id.* at ¶ 236-37. Plaintiff

further alleges that at least one agent carried a battering ram and another carried a

crowbar onto the porch, and all the agents were equipped with armored vests,

ballistic helmets, and shields. *Id.* at ¶ 239-40. Plaintiff purports that Commonwealth

Defendants Barrios and Rogers, as well as other federal agents, were crouched

behind their vehicles and aimed their guns at him. *Id.* at ¶ 244.

Plaintiff states that when he opened the door to the agents, he observed five

federal agents, including lead FBI agent Christopher Jackson, on his porch, some

with "AR-styled M-16 rifles pointed directly at Mr. Houck." *Id.* at ¶ 238.  Plaintiff

stated that "he immediately stepped onto the front porch with his hands up where the

officers could see him" and "turned and put his hands behind his back." *Id.* at ¶ 246-

47.  Plaintiff claims that the "federal agents on the porch frisked [him]," and an agent

stood behind him to secure him and held his "hands in the handcuffed position." *Id.*

at ¶ 249-50.  Plaintiff alleges that the "officers' guns remained pointed at him [during

the arrest] for several minutes." *Id.* at ¶ 268.  During the course of the arrest, Plaintiff

alleges his wife and children became aware of situation, claiming "a federal agent on the porch extend[ed] his gun across the threshold of the door in the direction of [Mrs. Houck's] young children clustered at the top of the stairs." *Id.* at ¶ 261.  When Plaintiff's wife, Mrs. Houck, went back into the house to get Plaintiff a sweatshirt upon the direction of the agents, "the agents pulled him off the porch and loaded him into a vehicle." *Id.* at ¶ 271-72.  The arrest warrant was produced at the scene. *Id.* at 277. Plaintiff was released less than ten hours later after his arrest on his own recognizance.  *Id.* at ¶ 279.

Plaintiff stood trial beginning on January 24, 2023 and was acquitted of all charges on January 30, 2023. *Id.* at ¶ 281-282.  The Federal Bureau of Investigation ("FBI") conducted the federal investigation leading to Plaintiff's subsequent indictment. *Id.* at ¶ 283.  Special Agent Christopher Jackson was the FBI's "lead investigative officer" in this matter. *Id.* at ¶¶  150, 228; Ex. 2.

## III.    ARGUMENT

### A. Applicable Standard of Review

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The pleading must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Although, for the purposes of a motion to dismiss, a court must accept all well-pleaded factual allegations included within the complaint as true, that requirement is inapplicable to legal conclusions; the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 556 U.S. at 684; *see Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Neither must a court accept "inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint." *Doe v. Pa. DOC*, 2021 WL 1583556, at *6 (W.D. Pa. Feb. 19, 2021) (citing *Cal. Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 677-79. Pleadings are not just to "unlock the doors of discovery for a plaintiff armed with nothing more than

7

conclusions." *Id.* at 678-79.

### 1. Documents to Consider in Motion to Dismiss

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings, and is limited to consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). However, judicial proceedings constitute public records that courts can take judicial notice of and courts may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiff's Amended Complaint references his arrest and indictment throughout, therefore incorporating the attached exhibits by reference. *See, e.g.,* ECF No. 46, ¶ 43, 118, 206, 208, 213.

### B. Qualified Immunity Shields Commonwealth Defendants from this Section 1983 Claim

Plaintiff's Amended Complaint must be dismissed because the Commonwealth Defendants are entitled to qualified immunity. The defense of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Qualified immunity is a "purely legal issue that can be resolved on the

pleadings at the motion-to-dismiss stage." *Henry v. Essex County*, 113 F.4th 355, 360 (3d Cir. 2024) (citing *Hernandez v. Mesa*, 589 U.S. 93, 98-99 (2020) (*Bivens*); *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (qualified immunity)).

Qualified immunity involves a two part inquiry: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court may consider these issues in any order, and the plaintiff's failure to establish either issue entitles a defendant to immunity. *Pearson*, 555 U.S. at 232, 236. "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). In the present matter, neither prong is satisfied.

### 1. Plaintiff Fails to Establish that Commonwealth Defendants Violated the Fourth Amendment

Plaintiff fails to plead facts that the Commonwealth Defendants violated his Fourth Amendment rights in his Amended Complaint. To sustain a claim under Section 1983 and under the first prong of qualified immunity, Plaintiff must aver personal involvement by each defendant in the alleged wrong. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A claim cannot be based on mere *respondeat*

*superior* or vicarious liability. *Rode*, 845 F.2d at 1207. For ***each*** responsible person, a complaint must state the time, place, and particular conduct of each alleged wrongful act. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Personal involvement in the alleged wrong "can be shown through allegations of personal direction or of actual knowledge and acquiescence," but "must be made with appropriate *particularity*." *Simonton*, 437 Fed. Appx. 60, 62 (3d Cir. 2011) (citing *Rode*, 845 F.2d at 1207). Specifically, liability under Section 1983 may be imposed on a government employee only if that employee has some personal involvement in the challenged wrongdoing. In such actions, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. . . . [E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-677 (2009). *See also Rode*, 845 F.2d at 1207.

Therefore, it is essential in a Section 1983 case against multiple actors, "that the complaint make clear exactly who is alleged to have done what to whom as distinguished from collective allegations." *See Brown v. Montoya*, 662 F.3d 1153, 1165 (10th Cir. 2011). It is not enough to "lump" all the named parties together using collective terms such as "the police" or "defendants." *Id. See also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (finding vague references to group of "defendants" without specific allegations tying individual defendants to alleged

unconstitutional conduct, are insufficient).  Furthermore, where – as in this case –

claims under 42 U.S.C. § 1983, alleging a constitutional violation, have been brought

against multiple defendants, the specific conduct of each individual defendant must

be analyzed separately.  *See Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)

(holding a Section 1983 complaint "must portray specific conduct by state officials

which violates some constitutional right of the complainant").  *See also Grant v. City*

*of Pittsburgh*, 98 F.3d 116, 122-123 (3d Cir. 1996) (noting that the conduct of each

defendant should be analyzed separately with respect to the alleged constitutional

violation).

As for an excessive force claim, liability for cannot be based upon an official's

mere presence at the scene where an alleged constitutional violation takes place.

*Williams v. City of York, Pennsylvania*, 967 F.3d 252, 259 (3d Cir. 2020). The central

tenant of Section 1983 liability that is "predicated on his direct and personal

involvement in the alleged violation" is "manifest in our excessive force

jurisprudence." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 289 (3d Cir.

2018).

Plaintiff's Amended Complaint lacks this basic jurisprudence in outlining

Commonwealth Defendants personal involvement in the alleged wrongdoing.  In

Plaintiff's specific factual allegations within his Amended Complaint against

Commonwealth Defendants Rogers and Barrios during the arrest on September 23,

2022, Plaintiff alleges their dash cam footage shows them pulling up to Plaintiff's house, parking in the "front of the driveway near the porch" and "pull[ing] into the yard," they both "got out of their cars to effectuate the arrest," and they along with other federal agents "crouched behind their vehicles and aimed their guns at [Mr. Houck]." ECF No. 46, ¶¶ 242, 244. The rest of the factual allegations of what allegedly occurred during the arrest do not specifically mention the actions of Commonwealth Defendants or their level of involvement in the arrest. Plaintiff alleges there were "[a]t least 20 law enforcement agents" involved in the arrest, and all other allegations regarding what occurred during the arrest are made collectively against "federal agents," "the agents," or "the officers." *E.g.*, *id.* at ¶¶ 238, 240, 249, 252, 265.

Plaintiff fails to establish the requisite particularity of individualized misconduct against the Commonwealth Defendants required for a pleading under *Iqbal*. 556 U.S. at 676. It is unclear from Plaintiff's Amended Complaint how long the Commonwealth Defendants, or even the other agents involved in the arrest, allegedly pointed their guns at Plaintiff. Plaintiff also fails to mention whether the Commonwealth Defendants ever moved out from crouching behind their vehicles, whether they responsible for securing the perimeter, or if they interacted with Plaintiff. The Amended Complaint also fails to mention whether the Commonwealth Defendants were the agents yielding shields, ballistic helmets, or armored vests, or

if they carried a battering ram or crowbar. To the extent that Plaintiff alleges that the Commonwealth Defendants were involved in securing the perimeter, this lack of involvement in the physical arrest of Plaintiff demonstrates that they could not have utilized excessive force. *Thomas v. Atty. Gen. of New Jersey*, 692 F.Supp.2d 444, 451-52 (D. N.J. 2010).

Rather, Plaintiff specifies that only federal agents were on the porch executing the arrest warrant in the Amended Complaint. Plaintiff states that five *federal* agents, including lead FBI Agent Christopher Jackson, stood on his porch with "AR-styled M-16 rifles pointed directly at Mr. Houck," "the *federal* agents on the porch frisked Mr. Houck," "[Mrs. Houck] saw one *federal* agent on the porch extend his gun across the threshold of the door in the direction of her young children clustered at the top of the stairs," and "the *federal* agent followed [Mrs. Houck's] movements with the gun as she descended the stairs." ECF No. 46, ¶¶ 238, 249, 261 (emphasis added).

It appears that one of Plaintiff's main allegations of excessive force against Commonwealth Defendants in his Amended Complaint is the amount of law enforcement involved in the arrest. *Id.* at ¶¶ 237, 301, 506. However, Plaintiff fails to allege any facts that Commonwealth Defendants had any control over the number of law enforcement present for the execution of an arrest warrant pursuant to a *federal* grand jury, after a *federal* investigation into Mr. Houck. Notably, Plaintiff specifically mentions that the *lead FBI Special Agent* was Christopher Jackson

multiple times within the Amended Complaint and explains his involvement in both the investigation and arrest of Plaintiff. *Id.* at ¶¶ 150, 156, 212, 224, 238, 419, 421, 428, 436, 442. Commonwealth Defendants Rogers and Barrios are troopers employed by the Pennsylvania State Police and there are no allegations alleged that they had any involvement in the investigation or planning of the execution of the arrest warrant. *Id.* at ¶ 25-26. Unlike other officers that participated in this arrest, Commonwealth Defendants Rogers and Barrios were not members of the federal task force. *See* ECF No. 40, p. 15; ECF No. 40-3, Ex. C. Commonwealth Defendants were simply asked by the FBI to assist with the arrest on September 23, 2022 and were present on the scene, but their mere presence does not constitute excessive force. *Williams*, 967 F.3d at 259.

The specificity of misconduct against the Commonwealth Defendants at this pleading stage is critical, and based on the Amended Complaint, the Commonwealth Defendants cannot be pulled into discovery, as "bare allegations of malice should not suffice to subject government officials . . . to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Plaintiff fails to specify or describe the level of participation of the Commonwealth Defendants Rogers and Barrios at the scene of the arrest besides stating they were present for the arrest and aimed their guns at him while crouched behind their vehicles, he fails to establish personal involvement. *See Williams*, 967 F.3d at 261; ECF No. 46, ¶

14

237, 244.  As discussed *infra*, this alleged conduct of the Commonwealth Defendants is not a violation of clearly established law and they are entitled to qualified immunity.

Even if any of the collective allegations against "agents" or "officers" within Plaintiff's Amended Complaint can be construed against the Commonwealth Defendants, no violation of Plaintiff's Fourth Amendment rights occurred during the arrest.  Plaintiff claims he was seized when he was arrested on September 23, 2022 and this seizure, the arrest, was objectively unreasonable. ECF No. 46, ¶ 489-90. However, Plaintiff is incorrect as he was arrested pursuant to a valid warrant, satisfying the requirements under the Fourth Amendment. *See Baker v. McCollan*, 443 U.S. 137, 143 (1979) (finding an arrest pursuant to a "facially valid warrant" was not constitutionally deficient); *Berg v. County of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000) (holding that the Court "generally extend[s] immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant."); *Kelly v. Jones*, 148 F.Supp. 395, 401-02 (E.D. Pa. 2015) (noting that officers have no constitutional obligation to investigate a case further when a facially valid warrant was issued).

Additionally, Plaintiff's arrest warrant was issued after a federal grand jury indicted him, which "conclusively" establishes probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (holding "an indictment, fair upon its face, and

returned by a properly constituted grand jury, conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry.") (citations and quotations omitted)).  As there are no allegations alleged against the Commonwealth Defendants that the grand jury indictment was "procured by fraud, perjury or other corrupt means," Plaintiff's arrest was lawful and Commonwealth Defendants did not violate Plaintiff's Fourth Amendment rights by participating in the arrest. *Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989); *see also Kelly*, 148 F.Supp. at 401-02.

Since Plaintiff was lawfully arrested pursuant to facially valid warrant, the next inquiry is whether the alleged force utilized in the arrest was reasonable. To determine whether excessive force has been utilized in violation of the Fourth Amendment, courts are to use the "reasonableness" inquiry: "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Courts are to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  Further, courts also "assess the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the

context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (citations and quotations omitted).

It is well established under Fourth Amendment jurisprudence that is acceptable to "use some degree of physical coercion or threat thereof to effect" an arrest. *Graham*, 490 U.S. at 396. Under the Fourth Amendment, a seizure can occur "by means of physical force or show of authority." *Id.* at 395 n.10 (citations omitted); *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991). Plaintiff makes no allegations of any physical force used during his arrest, only an alleged show of authority, or "show of force." ECF No. 46, ¶¶ 7-8, 256, 506. This "show of force" did not violate the Fourth Amendment as a show of authority alone does not constitute a violation under the Fourth Amendment. *U.S. v. Waterman*, 569 F.3d 144, 146 (3d Cir. 2009) (holding that while the police's "show of authority" by drawing their guns constituted a "display of force," this "fell short of the physical force required under *Hodari D.*"); *Meyer v. Havens*, No. 4:22-CV-01247, 2023 WL 4765590, at *5 (M.D. Pa. July 26, 2023) (citing *Speaks v. City of Phila.*, No. 96-CV-03428, 1996 U.S. Dist. LEXIS 19071, at *15-16 (Dec. 17, 1996)) ("It is established that allegations of law enforcement officers pointing guns alone are insufficient to state an excessive force claim under the Fourth Amendment."); *Robertson v.*

*McGowan*, No. 21-cv-222, 2023 WL 9231658, at *10 (M.D. Pa. Aug. 31, 2023) (same).  Furthermore, there is no "per se rule" when pointing guns or handcuffing suspects prior to an arrest would constitute excessive force; rather, they "must be justified by the circumstances." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995); *Pikel v. Garrett*, 55 Fed.Appx. 29, 32 (3d Cir. 2002).  In determining whether the use of force is reasonable, it is important to "consider the stressful nature of interactions between suspects and the police in balancing circumstances." *Pikel*, 55 Fed.Appx. at 33.

Here, the alleged "show of force" utilized in Plaintiff's arrest was not unreasonable in violation of the Fourth Amendment.  The officers' conduct in question occurred "in the context of effecting an arrest," Plaintiff did not suffer "physical injury," and the "duration of the arrest" only lasted for "several minutes." *See El*, 975 F.3d at 336; ECF No. 46, ¶ 268.  As discussed *supra*, personal liability cannot attach to Commonwealth Defendants for the ratio of law enforcement agents involved in Plaintiff's arrest despite Plaintiff's assertions, or lack thereof. Plaintiff only makes a conclusory statement that Commonwealth Defendants "knew or should have known that the ratio of law enforcement agents to Mr. Houck clearly compelled a low level of force," ECF No. 46, ¶ 301, but fails to provide any facts of how the Commonwealth Defendants had control of the amount of officers assigned to executing Plaintiff's arrest warrant.  Regardless, having about twenty officers on the

18

scene to execute the arrest warrant was not unreasonable, as the officers had to ensure the safety of all by controlling the scene, which included securing Plaintiff's family and home and any potential bystanders or neighbors. *See Mellott v. Heemer*, (noting a ratio of ten officers to five individuals "weigh[ed] significantly" in the officers' favor).  Notably, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation omitted).

Plaintiff attempts to downplay the severity of the crimes that he was charged with by claiming they were "non-violent crimes." ECF No. 46, ¶ 290.  However, the crime was serious, *see El*, 975 F.3d at 336, as he was charged with two felony offenses under the FACE Act for twice "attack[ing]" a patient escort who required medical attention after the altercations. Ex. 1; Ex. 2. Unlike Plaintiff's contention, Plaintiff's charges under the FACE Act were a "crime of violence." *See* 18 U.S.C. § 3156(4)(a) (defining a "crime of violence"); *United States v. Handy*, No. 23-3143, 2023 WL 7277155, at *2 (D.C. Cir. Nov. 3, 2023) (holding "one found guilty of violating the FACE Act by both force and nonviolent physical obstruction would still necessarily have been found guilty of a crime of violence.").  Due to the allegations of Plaintiff causing bodily harm to Mr. Love during the two altercations on October 13, 2021, Plaintiff was facing up to ten years in prison had he been convicted of these crimes. 18 U.S.C. § 248(b)(2).

19

Despite Plaintiff's broad assertions that Commonwealth Defendants Rogers and Barrios "knew or should have known that Mr. Houck never threatened law enforcement officers," they "knew or should have known" Mr. Houck and his family members did not own a firearm, and "knew or should have known that Mr. Houck would not offer resistance, violent or otherwise," he does not allege any facts to support this besides saying his lack of criminal record was public information and that all of this information should have been shared to the Commonwealth Defendants by the FBI investigative officers. ECF No. 46, ¶¶ 286, 293-95. Even if Plaintiff did not own a firearm, there is still a risk that he could have responded to the sight of law enforcement and armed himself with some type of weapon.

Plaintiff also alleges Commonwealth Defendants "knew or should have known" that Plaintiff was willing to and had offered to turn himself in though his counsel and that they "knew or should have known that Mr. Houck was represented by counsel all at relevant times during the arrest," but again offers no support of how Commonwealth Defendants Rogers and Barrios would have known this other than the conclusory statement that they would have been told by the FBI investigative officers. *Id.* at 286, 302-03. As discussed *supra*, this was a federal investigation that Commonwealth Defendants were uninvolved with nor had any control over, and cannot be held responsible for information that was not shared during any briefing prior to Plaintiff's arrest.

Lastly, Plaintiff's assertions that he fully cooperated during the arrest and did not resist or attempt to evade arrest attempts to circumvent the perspective of how to look at the arrest in the context of a Fourth Amendment violation. ECF No. 46, ¶ 268.  Rather, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *El*, 975 F.3d at 342 (quoting *Graham*, 490 U.S. at 396).  Although Plaintiff would have preferred a lesser show of force and even if that proved practicable from his perspective, this does not demonstrate that this show of force during his arrest violated his constitutional rights. Thus, there has been no violation of a federal or constitutional right and Commonwealth Defendants are entitled to qualified immunity.

### 2.  The Commonwealth Defendants Did Not Violate Clearly Established Law.

Assuming *arguendo* that Plaintiff has sufficiently alleged that Commonwealth Defendants violated the Fourth Amendment (he has not), the Amended Complaint does not allege a violation of clearly established law. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Anglemeyer v. Ammons*, 92 F.4th 184, 191 (3d Cir. 2024) (citations omitted).  Courts must focus on "whether the violative nature of *particular* conduct is clearly established." *Id.* (citations omitted).  To be clearly established, the precedent must be "settled law," or "dictated by controlling authority or a robust consensus of cases of persuasive

authority." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citations and quotations omitted). In order for "every reasonable official" to know the rule, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Williams*, 967 F.3d at 259 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In the Fourth Amendment context, specificity is "especially important . . . where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Because this is an area of law "'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix*, 577 U.S. at 13)).

Plaintiff has failed to plead facts that demonstrate there is precedent that "squarely governs" the present case so that "every reasonable official" would have known their conduct is unconstitutional. *See id.*; *Wesby*, 583 U.S. at 63. Commonwealth Defendants are unaware of any precedent from the United States Supreme Court that establishes that officers' possession and/or pointing of firearms

during the execution of a lawful arrest is itself a violation of the Fourth Amendment. Rather, the Supreme Court has emphasized that "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Bailey v. United States*, 568 U.S. 186, 194 (2013) (quoting *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981)); *see also Dalia v. United States*, 441 U.S. 238, 257, n.19 (1979) (holding "it is generally left to the direction of the executing officers to determine the details of how best to proceed" with the execution of a warrant and it is "often impossible to anticipate" what force "will be necessary"). Further, the Supreme Court has noted "the dangerous and difficult process of making arrests." *Maryland v. Garrison*, 480 U.S. 79, 87 (1987).

The Third Circuit Court of Appeals' precedent similarly does not clearly establish that the show of force alleged utilized in Plaintiff's arrest violated the Fourth Amendment.  One court in this district acknowledged that "our Court of Appeals has not outlined clearly the circumstances under which pointing a weapon of any kind at someone is excessive, and cases from this and other circuits addressing the issue of whether pointing a weapon at someone is an excessive use of force have done so under very different factual circumstances." *Arditi v. Subers*, 216 F.Supp.3d 544, 559 (E.D. Pa. 2016) (citing a collection of cases from the Ninth, Tenth, Eleventh, and Third Circuits).  Similarly, the Third Circuit cases that are potentially relevant to the factual allegations presented here that have found law enforcement's

23

pointing of firearms, combined with other conduct, might violate the Constitution, also do not "squarely govern" this case. *Kisela*, 584 U.S. at 104.

First, Plaintiff cites to *Couden v. Duffy* in his Amended Complaint to assert there is clearly established law that governs the facts alleged in this matter. ECF No. 46, ¶ 487. However, *Couden* is vastly distinguishable from the present matter. In *Couden*, law enforcement were conducting undercover surveillance outside a home in an attempt to apprehend a fugitive wanted for weapon and drug offenses. *Couden v. Duffy*, 446 F.3d 483, 489 (3d Cir. 2006). Law enforcement used physical force against the plaintiffs: officers mistakenly believed a fourteen-year-old was breaking into his own home, which ultimately led to officers approaching his mother, who was in her car in the driveway with her other children, with their guns drawn, and then the officers entered their home, tackling and handcuffing the fourteen-year-old son. *Id.* at 490.  The officers "threw him on the floor, where four men participated in pushing his head down, pointing guns at him, and spraying him with mace." *Id.* The divided Court found that although the officers may have thought that the fourteen-year-old was an intruder, the "level of force was unnecessary and constitutionally excessive." *Id.* at 497.

*Couden* does not clearly establish the law in this matter.  Unlike in *Couden*, law enforcement here were executing an arrest warrant for Plaintiff after he was indicted by a federal grand jury for physical altercations against a Planned

Parenthood volunteer. The Commonwealth Defendants, nor any of the other officers that participated in Plaintiff's arrest, used any physical force on Plaintiff or his family. Plaintiff does not allege that the Commonwealth Defendants or any of the agents entered his home, used mace on him during the arrest, or threw him to the ground. Due to the distinguishable facts in *Couden* to this present matter, it cannot be reasonably construed to clearly establish the law.

Second, this case is also discernable from *Baker v. Monroe Township*. In *Baker*, a mother and her three children were caught in the midst of a drug raid at the mother's son's apartment and they brought suit against the officer in charge of the raid and the municipality. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1188, 1190-91 (3d Cir. 1995). Law enforcement was executing a "no-knock" warrant as the family arrived to the apartment, and the family was forced to the ground, they were handcuffed (some for twenty-five minutes), and guns were pointed at them, including the mother who claimed that a gun was pointed at her head while handcuffed. *Id.* at 1189. The Court found that the combination of the use of firearms and handcuffs on the plaintiffs and the length of the detention could support a finding that the family's Fourth Amendment rights were violated. *Id.* at 1193.

Contrary to the plaintiffs in *Baker*, Mr. Houck did not find himself in the midst of an arrest while visiting someone else's home; rather, he was indicted for serious crimes and the subject of a valid arrest warrant. Ex. 1; Ex. 2. Additionally, he was

not detained in handcuffs for an extended period of time with a gun pointed directly at his head. In fact, his arrest only lasted for just "several minutes." ECF No. 46, ¶ 268.  The Amended Complaint is unclear as to how long any of the officers allegedly kept their weapons pointed at Plaintiff once he was detained, or even that the Commonwealth Defendants kept their alleged guns pointed at Plaintiff from behind their vehicles once he was detained. *See id.* at ¶ 244, 265. However, considering Plaintiff's assertion that this arrest only lasted "several minutes," the officers' conduct in *Baker* is drastically different from the alleged facts against the officers here. Within the presumably short time Mrs. Houck went inside the house to find a sweatshirt for Mr. Houck to when she returned outside, Mr. Houck was already placed in a police vehicle. *Id.* at ¶ 272, 275.  Further, to the extent that Plaintiff attempts to demonstrate the officers' show of force while his wife and children were present for the arrest was excessive and that Commonwealth Defendants should have known they would be present, Plaintiff's wife and children, whom are parties to this matter for other claims, do not claim that Commonwealth Defendants violated their Fourth Amendment rights like the plaintiffs in *Baker*. ECF No. 46, p. 91-94.

The Third Circuit's decision in *Pikel v. Garrett* also demonstrates the lack of clarity in the law regarding a law enforcement's show of force while executing an arrest warrant. In *Pikel*, the Court distinguished the case from *Baker* and found the officers did not violate clearly established law by handcuffing uninvolved employees

present for a search in the course of a drug investigation "for approximately three and one half hours." *Pikel*, 55 Fed.Appx. at 30.  The officers also physically injured one employee by pushing him to the group and pointing a gun at his ear. *Id.* The Court noted it was a "close call," however, the constitutionality of the force was "highly dependent upon a balance of circumstances" and the officers were entitled to qualified immunity. *Id.* at 33.  In another case, the Third Circuit held that the conduct of twenty officers and a SWAT Team with machine guns, who engaged in "Rambo-type behavior," did not constitute a violation of the Fourth Amendment. *Sharrar v. Felsing*, 128 F.3d 810, 821-22 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).

The law is not clearly established on the particular conduct alleged in the Amended Complaint against the Commonwealth Defendants and does not "squarely govern" the factual allegations in this matter. *See Anglemeyer*, 92 F.4th at 191; *Kisela*, 584 U.S. at 104. There is also no robust consensus of precedent or controlling authority clearly establishing the alleged show of force during Plaintiff's arrest. *See Wesby*, 583 U.S. at 63. Therefore, the Commonwealth Defendants are entitled to qualified immunity.

## IV.    CONCLUSION

Based on the foregoing reasons, Commonwealth Defendants Rogers and Barrios respectfully request that all claims against them be dismissed.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: October 10, 2024            By:   */s/ Adrienne M. Box*
_____

Office of Attorney General              Adrienne M. Box
1600 Arch Street, Suite 300             Deputy Attorney General
Philadelphia, PA 19103                  Attorney I.D. No. 325818
Phone: (267) 768-3958
abox@attorneygeneral.gov                Nicole R. DiTomo
                                        Chief Deputy Attorney General
                                        Civil Litigation Section

                                        *Counsel for Commonwealth*
                                        *Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Adrienne M. Box, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that the foregoing Commonwealth Defendants' Motion to Dismiss Plaintiff's Amended Complaint has been filed electronically on October 10, 2024, is available for viewing and downloading from the Court's Electronic Case Filing system, and therefore, served on all counsel of record via the Court's ECF system.

       */s/ Adrienne M. Box*
       Adrienne M. Box
       Deputy Attorney General