IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK HOUCK, RYAN-MARIE HOUCK, and RYAN-MARIE HOUCK ON BEHALF OF M.H., A.M.H., K.H., T.H., J.H., A.H., and I.H., <br><br>Plaintiffs;<br><br>v.<br><br>UNITED STATES OF AMERICA; MICHAEL ROGERS, JUAN BARRIOS, JOHN DOE #1, STEPHEN CAPUTO, BRIAN CALABRESE, STEVE JOHNSON, JOHN DOE #2, JOHN DOE #3, ZACH BROSIUS, and JOHN DOE #4,<br><br>Defendants. | No. 2:24-CV-02151 |

## SUR-REPLY IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

COME NOW Plaintiffs who write to respond to several errors in the Reply (**Doc. 60**) of Defendant the United States. Plaintiffs' remaining objections to Defendant's Motion to Dismiss can be found in their Response Brief, **Doc. 57-1**.

**I.  Defendant errantly seeks to apply a heightened pleading standard.**

Defendant's Reply starts with three foundational errors, seriously misstating the legal standard by which to judge the Complaint. First, Defendant would hold the Complaint to a heightened pleading standard to survive a Motion to Dismiss. Per

1

Defendant, Plaintiffs' complaint must include proof that demonstrates the absence of probable cause. But that is not the pleading standard. Plaintiffs need only *plausibly allege* probable cause was absent. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (noting that *Twombly*'s low bar "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of a cause of action. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))). The Court may not dismiss if "under *any* reasonable reading of the complaint, the plaintiff *may* be entitled to relief." *Id.* at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (emphasis added).

Second, Defendant is mistaken in asserting that the allegations in the complaint lack evidentiary support and are therefore conclusory. On the contrary, Plaintiff has presented specific details and reasonable inferences drawn from undisputed facts that address each element of its claims. While discovery may uncover additional direct evidence supporting these allegations, this would serve to confirm their validity, not render them conclusory. *Phillips*, 515 F.3d at 234.

Third, Defendant erroneously wars against the allegations in the Complaint by refusing to accept them as true. This error pervades the Reply, but it especially infects Defendant's analysis of probable cause as an element of the false arrest and malicious prosecution claims. Defendant chastises Plaintiffs for allegedly failing to

"dispute that any of the evidence outlined in the government's motion establishing a fair probability of a FACE Act violation, U.S. Mot. 15–18, is true." **Doc. 60 at 3**. But this is not the summary judgment stage; "evidence is irrelevant to a Rule 12(b)(6) motion." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011); *see also Isajewicz v. Bucks Cnty. Dept. of Comms.*, 851 F. Supp. 161, 165 (E.D. Pa. 1994) ("[I]n a motion to dismiss, the plaintiff need not present any evidence, but may rely exclusively on her pleadings."). Defendant cannot incorporate its own facts or spin the allegations. Rather, the Court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)). The Court may not dismiss a complaint "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231.

II. **Defendant commits several specific errors in its analysis of whether Plaintiffs have plausibly alleged the absence of probable cause.**

Defendant's specific probable cause arguments are also erroneous.

### A. Plaintiffs have plausibly alleged the presence of fraud, perjury, or other corrupt means.

Defendant spends several pages arguing that the Complaint has not plausibly alleged the Federal Bureau of Investigation ("FBI") used fraud, perjury, or other corrupt means to obtain the Indictment. But, as demonstrated in Plaintiffs' Response

3

and hereafter, Plaintiffs have presented "enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of a cause of action. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

Based on what Plaintiffs can reasonably know about the fraud, perjury, and corruption that occurred before, during, and after those grand jury proceedings at this stage of the lawsuit, they have presented sufficient facts to state a claim for relief. Plaintiffs have plausibly alleged that before the grand jury proceedings the FBI knew that it did not have probable cause to prosecute Mr. Houck. The outcome of the proceedings—whether FBI agents themselves presented the false testimony or instead coached and facilitated false testimony from witnesses they had already interviewed—was an indictment that fundamentally contradicted the truth. The FBI was fully aware of the truth when it sought and obtained the indictment.

Specifically, the FBI knew that: (i) Mr. Love had a history of antagonizing Mr. Houck and pro-life volunteers; (ii) Mr. Houck lacked both necessary intents to violate the Freedom of Access to Clinic Entrances ("FACE") Act; (iii) Mr. Houck was the victim of a FACE Act violation committed by Mr. Love; (iv) the physical contact between them during the Second Incident arose because Mr. Houck was defending his son and was entirely unrelated to Mr. Love's role as a Planned Parenthood volunteer; and (v) Mr. Houck did not use force in connection with the First Incident. **Doc. 46 at ¶¶ 213-22; Doc. 57-1 at 17-20**. But despite knowing the

evidence exonerated Mr. Houck, *cf. Xi v. Haugen*, 68 F.4th 824, 829-30 (3d Cir. 2023), the FBI proceeded to deliberately target Mr. Houck. **Doc. 46 at ¶ 131**. During those grand jury proceedings, the FBI put on fraudulent evidence. *Id.* **at ¶¶ 131, 223-24, 228**. Plaintiffs do not yet know who testified during those proceedings. But as Plaintiffs have plausibly alleged, because of the FBI's fraudulent presentation of evidence during the grand jury proceedings, the jury retained an Indictment that was blatantly and materially false and contrary to what the FBI agents knew to be true prior to the Indictment. *Id.* **at ¶ 131** ("Plaintiffs allege that the FBI presented misleading evidence because the grand jury could not have reached the findings in the indictment without the FBI's witnesses having been allowed to testify to a version of the facts that contradicted video evidence, earlier interview statements to the FBI, and later trial testimony under oath. Plaintiffs have already demanded that the DOJ preserve relevant documents and expect to obtain evidence of the FBI's interviews and grand jury conduct through discovery . . . ."). The FBI's presentation of fraudulent information to the grand jury rebuts the presumption of probable cause. *Cf. Xi*, 68 F.4th at 830.

Defendant first tries to dodge these allegations by deriding them as completely "conclusory." Defendant's next purports to make purely legal arguments: that even if true, the allegations aren't legally sufficient to negate probable cause. But on closer examination, Defendant's arguments are not legal at all; they are factual attacks on

the truthfulness of the allegations. Defendant attempts to cast doubt on Plaintiffs' allegations as if Defendant could win its motion by creating a genuine dispute of material fact. Even if this were a summary judgment motion, Defendant does not bolster its factual attack with any actual evidence. Defendant exploits the secrecy of the grand jury process to unreasonably suggest that the grand jury received objective evidence of Houck's innocence but still chose to indict him. Defendant's objections, in short, violate the command to accept all allegations in the Complaint as true. They do not reveal any failure to state a claim.

Defendant first faults Plaintiffs for failing to allege precisely who testified and what exactly they said during the grand jury proceedings. But as Defendant acknowledges, grand jury proceedings are secret, **Doc. 60 at 4**, so Plaintiffs cannot know these exact details. Asking Plaintiffs to provide the evidentiary detail of exactly what happened in those proceedings at the pleading stage would serve as a per se bar to all malicious prosecution and false arrest claims where there was a grand jury indictment, unless there was a leak of grand jury information or the unusual case of *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989), where the public indictment itself "specifically set[] forth the names of the various witnesses and the scope of their testimony." *Id*. at 354. The law does not require Plaintiffs to wait for a governmental breach of secrecy to bring their claims. These claims can proceed even absent knowledge of which witnesses testified.

6

Defendant also alleges that testimony from Mr. Houck's criminal trial reveals that Mr. Love and Mr. Dahn testified to the grand jury and therefore FBI agents did not testify alone. **Doc. 60 at 4**. From this questionable premise (which may be disproved by discovery), Defendant reasons that there can be no fraud, perjury, or other corruption in the FBI's presentation. *Id.* **at 4-6**. But even if this uncorroborated trial testimony conclusively established some of the witnesses who testified at the grand jury proceedings, the mere testimony of non-FBI witnesses would not eliminate the FBI's culpability for fraudulently presenting evidence. These are not mutually exclusive propositions. All *Xi* and other cases require to rebut probable cause is that the indictment be "procured by fraud, perjury, or other corrupt means." *Xi*, 68 F.4th at 841 (quoting *Rose*, 871 F.2d at 353). And here, like in *Xi*, Plaintiffs have alleged that the FBI provided prosecutors with false information, **Doc. 46 at ¶¶ 284, 421** ("FBI officers initiated a criminal proceeding when Agent Jackson intentionally, knowingly, and/or recklessly made or caused false statements and representations and material omissions of facts in his reports, affidavits, and other communications with federal prosecutors."), and Plaintiffs have alleged that the FBI presented fraudulent evidence to the grand jury, which resulted in the Indictment, *id.* **at ¶¶ 223-24**. The presence or absence of witnesses put on by the FBI does not diminish those allegations.

Defendant also objects to the allegation that the FBI would have learned some but not all information pre-Indictment that came out during trial. **Doc. 60 at 4**. Defendant argues that the FBI would have learned information from all other witnesses who testified at trial, and therefore, the Court should impute knowledge of all this information to the FBI. But Defendant does not identify any portion of the operative Complaint to support its theory. And the Complaint demonstrates the exact opposite. **Doc. 46 at ¶¶ 58-83;** *see also* **Doc. 57-1 at 29**. Instead, Defendant postulates that it "belies belief" that the FBI would not have access to all information presented at trial. **Doc. 60 at 4**. But again, Defendant's requested exercise violates the mandate to construe all allegations in the Complaint as true. And even if this Court entertained Defendant's hypothetical, the Court would not arrive at Defendant's conclusion. It does not "belie[] belief" that some but not all of the testimony presented at trial was available to the FBI prior to the grand jury proceedings.

### B. Plaintiffs alleged the FBI procured the Indictment.

Defendant also erroneously claims that notwithstanding the allegations, *see, e.g.*, **Doc. 46 at ¶¶ 190, 211-12, 224**, the FBI did not secure the Indictment through its fraudulent presentation to the grand jury. **Doc. 60 at 4, 6**. To reach this result, Defendant blatantly misrepresents the Complaint and criminal trial transcript. As "evidence" that federal prosecutors participated in the pre-Indictment investigation

and presented the case to the grand jury, Defendant cites "Jan. 26, 2023, Trial Tr. 83:13–16 (Mr. Love met with the FBI and federal prosecutors between five and eight times); *accord* FAC ¶ 283 (admitting the FBI participated, with federal prosecutors, in the investigation)." **Doc. 60 at 6**. But the trial transcript does not support Defendant's conclusory allegation. The transcript merely says:

> Q: Mr. Love, how many times have you been interviewed by the FBI or the U.S. Attorneys' Office since the beginning of this case?
> A: I would say somewhere between five and eight.

Jan. 26, 2023, Trial Tr. 83:13–16. In his testimony, Mr. Love never specified whether he was interviewed by the FBI or U.S. Attorney's Office or whether those interviews took place before or after the Indictment. Thus, this excerpt does not require accepting Defendant's factual claim. Likewise, Defendant's cited paragraph from the Complaint never says the prosecutors were part of the investigation. It merely states: "FBI's investigative officers participated in the investigation leading to Mr. Houck's subsequent indictment." **Doc. 46 at ¶ 283**. Defendant's citations are, at best, misleading.

Defendant also wrongly puts the burden on Plaintiffs "to rebut the government's showing that the FBI did not initiate or procure the indictment in this case. U.S. Mot. 20–23." **Doc. 60 at 10**. As stated, Plaintiffs do not need to satisfy the summary judgment standard at the motion to dismiss stage. And even if Plaintiffs had such a burden, the "government's showing" amounts to a misrepresentation of

9

the Complaint and a failure to identify any allegations or facts demonstrating that the FBI did not initiate or procure the Indictment. **Doc. 49 at 29-32**.

For the reasons emphasized in Plaintiffs' Response, **Doc. 57-1 at 30-32**, the Complaint clearly establishes that the FBI procured the Indictment, Defendant's misleading statements notwithstanding.

### C. Plaintiffs articulate the correct probable cause standard.

Defendant also alleges that Plaintiffs misstated the standard for probable cause, confusing whether the FBI weighed the evidence properly (which does not negate probable cause) with whether the FBI misinterpreted or falsified information (which does negate probable cause). **Doc. 60 at 7**. But it is *Defendant* who mischaracterizes the probable cause standard. Defendant wrongly attempts to cast necessary elements to bring a FACE Act prosecution as mere "defenses" that the suspect must disprove. *Id.* For example, Defendant casts the requirement of a suspect's intent as an affirmative defense—not a necessary prerequisite to establish probable cause. *Id.* **at 6-7**. Defendant attempts to shroud the arrest in the fog of universal deference to FBI agents without analyzing each essential element.

But each element of 18 U.S.C. § 248 is a necessary predicate for the FBI to establish probable cause to indict and arrest Mr. Houck under the FACE Act. *See* 18 U.S.C. § 248; *see also Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) ("Whether any particular set of facts suggest that an arrest is justified by probable

cause requires an examination of the elements of the crime at issue."); *Grant v. City of Phila.*, 637 F. Supp. 3d 247, 261 (E.D. Pa. 2022); *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004) (holding that failure to separately establish two independent intent requirements defeats FACE Act claim); *Cain*, 418 F. Supp. 2d at 478 (describing the two intent requirements of the FACE Act); *cf. Xi*, 68 F.4th at 829-30 (finding where elements of the crime were missing, there was no probable cause). At Mr. Houck's criminal trial, the United States admitted as much: "If I may, Your Honor. Element 3 requires us to prove motive and the defendant's state of mind." January 26, 2023, Trial, at 22:16-17.

Thus, to establish probable cause, the facts and the circumstances had to be sufficient for a prudent person to believe that the suspect acted with (1) force, threat of force, or physical obstruction (2) with intent to injure, intimidate, or interfere with another person, or attempted to do so (3) because that person has sought or provided, or is seeking or providing, or will seek or provide, reproductive health services. 18 U.S.C. § 248; *cf. Wright*, 409 F.3d at 603 (requiring officers to satisfy this standard for each of the elements of criminal trespass to establish probable cause for criminal trespass). Because the Complaint plausibly alleges that a reasonably prudent person in the officers' shoes would know that some, if not all, of these elements were missing, and that evidence actually *disproved* the required elements, the Complaint

11

has plausibly alleged that probable cause was also absent. *See* **Doc. 57-1 at 21-27** (discussing missing elements to establish probable cause for a FACE Act violation).

### D. Mr. Houck's case is like *Xi* and unlike *Rose*.

Defendant makes a final effort to argue *Xi v. Haugen* does not advance the Complaint beyond the Motion to Dismiss stage and instead postulates *Rose v. Bartle* is more apt. **Doc. 60 at 5-6**. But Defendant is incorrect: *Xi*, not *Rose*, decides this case.

Like in *Xi*, Plaintiffs have plausibly alleged that during the FBI's pre-Indictment investigation, the FBI learned exculpatory evidence that obliterated any shred of probable cause to prosecute Mr. Houck. *Cf. Xi*, 68 F.4th at 829-30 (noting that Complaint plausibly alleged that FBI procured indictment through fraud by charging Xi with wire fraud for emailing Chinese entities sensitive information about technology known as a "pocket heater" when FBI really knew that Xi's emails were about a different technology); *see generally* Complaint, *Xi v. Haugen*, No. 2:17-cv-02132-RBS, 2017 WL 1953032 (E.D. Pa., filed May 10, 2017). Like in *Xi*, the FBI knew prior to the Indictment that at least one critical element of the crime was missing, and the facts exonerated the suspect. And like in *Xi*, the Complaint has plausibly alleged that the FBI presented fraudulent evidence to the grand jury. Here, like there, "the agent[s] misrepresented objective facts." **Doc. 60 at 6**. There are no allegations in the Complaint (or any other irrelevant external document cited by

Defendant) that shows prosecutors—to the exclusion of the FBI—acted alone in engineering each essential part of the showing leading to the grand jury Indictment. The allegations in the operative Complaint follow those in the complaint in *Xi*. *See generally* Complaint, *Xi v. Haugen*, No. 2:17-cv-02132-RBS, 2017 WL 1953032 (E.D. Pa., filed May 10, 2017). Accordingly, *Xi* decides this case. *See* **Doc. 57-1 at 17-21 & n.1**.

Defendant argues that *Xi* is materially distinct from the present case because "in *Xi*, the evidence presented to the grand jury consisted solely of evidence from the investigating FBI agent, nor was there evidence that prosecutors evaluated or presented evidence from anyone other than the agent." **Doc. 60 at 6**. But contrary to Defendant's assertion, *Xi* never stated that "the evidence presented to the grand jury consisted solely of evidence from the investigating FBI agent." *Id.* Rather, it stated that the FBI agent "provid[ed] false information that led to Xi's prosecution." *Xi*, 68 F.4th at 841. *Xi* never specified who testified at the grand jury proceedings or what evidence was provided to the grand jury. And while it may be true that *Xi* did not discuss other "evidence that prosecutors evaluated or presented," that fact is just as easily attributable to the stage of the proceedings—*i.e.* the pleadings stage—as it is to the absence of such evidence. *Id*. at 832. The court had yet to dig into the evidence. Here the same result should attain when the Court draws the allegations in the light most favorable to Plaintiffs. Finally, even if Defendant's claims about the facts of *Xi*

13

are accurate, it would not be dispositive: *Xi* is descriptive, not prescriptive, for how a plaintiff can show fraud, perjury, or other corrupt means. *Id.* at 841.

*Rose* is less analogous. In *Rose*, the court applied a heightened pleading standard since the case involved claims arising under 42 U.S.C. § 1983, claims not at issue here. 871 F.2d at 353. It found that plaintiffs did not allege what portions of presentment were procured through fraud or perjury, even though the indictment specifically "set[] forth the names of the various witnesses and the scope of their testimony." *Id*. at 354.

Unlike *Rose*, Plaintiffs have alleged what portions of presentment were procured through fraud or perjury. *Cf. id*. And Plaintiffs do not have a presentment that "sets forth the names of the various witnesses and the scope of their testimony"—which was critical to the court's conclusion in *Rose*. *Id.* Here, unlike there, discovery is necessary to know exactly what occurred during the grand jury proceedings. *Id.*

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in Plaintiffs' Opposition to Defendant United States' Motion to Dismiss, **Doc. 57**, and their supporting Brief, **Doc. 57-1**, the Court should deny the Motion to Dismiss.

Dated: November 27, 2024                  Respectfully submitted,

| 40 DAYS FOR LIFE | GRAVES GARRETT GREIM LLC |
|---|---|
| /s/ *Matthew Britton* <br> Matthew Britton, Va. Bar No. 39160* <br><br> Gregory Dwight Artis Jr., Neb. Bar No. 24743* <br> 4112 East 29th Street <br> Bryan, Texas 77802 <br> Tel: (888) 543-3316 <br> matt.britton@40daysforlife.com <br> dwight.artis@iljlaw.com <br> *Attorneys for Plaintiffs* <br><br> BOCHETTO & LENTZ, P.C. <br><br> /s/ *Ryan T. Kirk* <br> George Bochetto, Pa. Bar No. 27783 <br> Ryan T. Kirk, Pa. Bar No. 329492 <br> 1524 Locust Street <br> Philadelphia, PA 19102 <br> Tel: (215) 735-3900 <br> gbochetto@bochettoandlentz.com <br> rkirk@bochettoandlentz.com <br> *Attorneys for Plaintiffs* | /s/ *Edward D. Greim* <br> Todd P. Graves, Mo. Bar No. 41319* <br> Edward D. Greim, Mo. Bar No. 54034* <br> Katherine E. Graves, Mo. Bar No. 74671* <br> 1100 Main Street, Suite 2700 <br> Kansas City, Missouri 64105 <br> Tel: (816) 256-3181 <br> Fax: (816) 256-5958 <br> tgraves@gravesgarrett.com <br> edgreim@gravesgarrett.com <br> kgraves@gravesgarrett.com <br> *Attorneys for Plaintiffs* <br><br> JAMES OTIS LAW GROUP, LLC <br><br> /s/ *Justin D. Smith* <br> Justin D. Smith, Mo. Bar No. 63253* <br> 13321 North Outer Forty Road, Suite 300 <br> St. Louis, Missouri 63017 <br> Tel: (314) 562-0031 <br> Justin.Smith@james-otis.com <br> *Attorney for Plaintiffs* <br><br> * *pro hac vice* admitted |

15

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this 27th day of November, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
*Attorney for Plaintiffs*
